**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

FRANKENMUTH MUTUAL INSURANCE
COMPANY a/s/o THERMA SEAL ROOF
SYSTEMS, LLC,

    Plaintiff,                                      Case No.: 0:22-cv-60003

v.

ANATOM CONSTRUCTION COMPANY, and
UNITED STATES SURETY COMPANY,

    Defendants.
_____/

## COMPLAINT

PLAINTIFF FRANKENMUTH MUTUAL INSURANCE COMPANY ("Frankenmuth"), by and through undersigned counsel, and as subrogee and assignee of THERMA SEAL ROOF SYSTEMS, LLC ("Therma Seal"), sues ANATOM CONSTRUCTION COMPANY ("Anatom") and UNITED STATES SURETY COMPANY ("US Surety"), and states as follows:

1. This is an action for monetary damages.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, on the basis of diversity jurisdiction with an amount in controversy over $75,000, excluding costs, attorneys' fees and interest.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 18 U.S.C.§ 1965, as all parties reside, or found, have an agent, or transact affairs within this district.

## PARTIES

4. This is an action for damages in an amount in excess of $75,000, exclusive of costs, attorneys' fees, and pre and post-judgment interest.

5. Plaintiff Frankenmuth is and at all times mentioned a corporation organized and existing under the laws of Michigan, with its principal place of business located at 1 Mutual Avenue, Frankenmuth, Michigan 48787.  Frankenmuth is authorized to conduct business in the State of Florida.

6. Defendant Anatom is and at all times mentioned a corporation organized and existing under the laws of Florida, with its last known principal place of business located at 490 Business Park Way, Royal Palm Beach, Florida 33411.

7. Defendant US Surety is and at all times mentioned a corporation organized and existing under the laws of Maryland, with its last known principal place of business located at One Texas Station Court, Suite 230, Timonium, Maryland 21093.

8. All conditions precedent to the filing of the instant action have occurred or have been waived.

## RELEVANT FACTS

*Subcontract and Bonds*

9. On or about October 4, 2018, Anatom and Therma Seal entered into a subcontract for a roofing project at Quiet Waters Elementary School for the contract sum of $1,610,000.00 (the "Subcontract," and such project, the "Project").  A copy of the Subcontract is attached hereto as Exhibit "A."

10. At all relevant times, the owner of the Project was the School Board of Broward County Public Schools ("The School Board").

11. US Surety, as surety for Anatom, issued Performance and Payment Bonds on behalf of Anatom, as bond principal, in favor of The School Board, with each bond bearing number 100405319, and dated August 7, 2018, and each in the penal sum of $4,799,926.00, ("US Surety Bonds"). A copy of the US Surety Bonds is attached as Exhibit "B."

12. Frankenmuth, as surety for Therma Seal, issued Performance and Payment Bonds on behalf of Therma Seal, as bond principal, in favor of Anatom, with each bond bearing bond number SUR0001534, and dated October 4, 2018, and each in the penal sum of $1,610,000.00 (hereinafter, the "Performance Bond" and the "Payment Bond," respectively, and collectively the "Bonds"). A copy of the Bonds is attached as Exhibit "C."

*Defaults under the Subcontract*

13. By letter dated February 2, 2021, Anatom advised Therma Seal that it was in default of the Subcontract.

14. Therma Seal disputed such claim.

15. Following the alleged default, Anatom demanded that Frankenmuth perform under the Performance Bond. In accordance with the terms of the Performance Bond, Frankenmuth agreed to complete the Subcontract according to the terms thereof and elected to do so utilizing the services of a completion contractor.

16. After months of soliciting bids and vetting subcontractors, Frankenmuth selected Atlas-Apex Roofing LLC ("A-A Roofing" or "Completion Contractor").

17. The project was scheduled to be substantially completed on or about August 12, 2021.

*Payments Pursuant to the Subcontract*

18. Regarding payment under the Subcontract, Therma Seal submitted its October 2020 requisition in the amount of $48,163.50, for which $10,000.00 was previously paid by Anatom.

19. Therma Seal submitted its November 2020 requisition in the amount of $100,359.91, for which Anatom initially issued no payment. Therma Seal's November 2020 requisition was subsequently revised to $104,420.87.

20. Therma Seal submitted its December 2020 requisition in the amount of $28,260.00, for which Anatom initially issued no payment. In March 2021, Anatom revised Therma Seal's December 2020 requisition to $14,580.00.

21. Despite Anatom receiving payment from The School Board for Therma Seal's October 2020 and November 2020 requisitions, Anatom failed to pay Therma Seal for these two requisitions, compelling Frankenmuth to assert that Anatom had breached the Subcontract.

22. On February 17, 2021, Frankenmuth filed a payment bond claim with US Surety demanding payment.

23. In March 2021, Anatom paid the balance of Therma Seal's October 2020 requisition. In April 2021, Anatom paid Therma Seal's revised November 2020 requisition and December 2020 requisition.

24. Therma Seal also submitted change orders 4, and 11 – 18, which had not been processed or paid by Anatom ("Outstanding Change Orders"). Thus, Therma Seal has not been paid for the work performed pursuant to the Outstanding Change Orders. Anatom demanded that Frankenmuth give up its rights to pursue payment of these change orders.

25. The balance due to Therma Seal pursuant to these change orders is $77,783.39.

26. Anatom has materially breached the Subcontract by failing to pay the unpaid balance of the Subcontract.

27. Therma Seal fully performed its obligations under the Subcontract.

*Anatom's Interference with the Completion Contractor*

28. Upon learning that Therma Seal was declared in default of the Subcontract, Frankenmuth had the option to undertake to perform and complete the Subcontract itself.

29. Frankenmuth, as surety, fulfilled its obligations under the Performance Bond by selecting A-A Roofing LLC as the Completion Contractor.

30. Unfortunately, Anatom began negotiating with the Completion Contractor directly in an apparent attempt to circumvent Frankenmuth entirely.

31. Upon information and belief, for some period of time, the Completion Contractor refused to work with Frankenmuth at all, and negotiations stalled.

32. Negotiations resumed, and A-A Roofing is ready, willing and able to complete performance of Therma Seal's obligations under the Subcontract.

33. However, Anatom continues to interfere with Frankenmuth and Anatom's business relationship by, among other things, imposing onerous payment terms and otherwise interfering with Frankenmuth's ability to successfully negotiate its contract with A-A Roofing.

34. During the period of interference, A-A Roofing's proposed contract price has significantly increased, which will burden Frankenmuth with a much higher cost to complete.

35. To date, A-A Roofing and Frankenmuth have been unable to agree upon the terms of the completion contract.

*Frankenmuth is Assignee of Therma Seal's Right to Payment under the Subcontract*

36. In consideration for Frankenmuth issuing the Bonds, Therma Seal executed a General Indemnity Agreement ("GIA") in favor of Frankenmuth on or about July 24, 2018. A copy of the GIA is attached as Exhibit "D."

37. In paragraph 6 of the GIA, Therma Seal assigned to Frankenmuth, inter alia, "(a) all monies due or to become due to the Indemnitors as a result of the Contract(s), including but not limited to, progress payments, advances, deferred payments, retained percentages, causes of action against any other party, payment for extra work and proceeds of any delay or other damage claims; [and] (b) all right, title and interest of the Indemnitors in or growing out of the Contract(s)[.]"

38. Upon Therma Seal's alleged default, Frankenmuth has the right to "(a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; . . . (b) immediately take possession of Indemnitors' Property; (c) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as Company sees fit; (d) execute in the name of any Indemnitor, any instrument deemed necessary or desirable by Company to: . . . (ii) take immediate possession of Contract funds whether earned or unearned, [iii] collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors [;] . . . (g) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts . . . . and/or (h) exercise any other rights or remedies set forth herein or otherwise available at law or in equity." GIA paragraph 7.

39. Therma Seal defaulted pursuant to the terms of the GIA because Anatom declared Therma Seal in default and made a claim under the Payment Bond.

40. Accordingly, Frankenmuth commences this action as assignee and as set forth below, as subrogee of Therma Seals' rights under and interest in the Subcontract.

41. Frankenmuth has found in necessary to engage the services of the undersigned attorneys, and has agreed to pay the attorneys a reasonable fee for their services, for which Defendants are liable pursuant to § 255.05(2) Fla. Stat. (2021).

Count I – Equitable Subrogation
(Against Anatom)

42. This is an action for equitable subrogation against Anatom.

43. Frankenmuth re-alleges and re-avers the allegations of paragraphs 1-41 above as if fully set forth herein.

44. After learning of Therma Seal's default, Frankenmuth elected to complete Therma Seal's work using a Completion Contractor.

45. Frankenmuth has stepped into the shoes of Therma Seal through equitable subrogation for claims to payment. *Transamerica Ins. v. Barnett Bank,* 540 So.2d 113, 115-16 (Fla. 1989). ("When, on default of the contractor, [the surety] pays all bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it[.]").

46. Frankenmuth, as surety and secondary obligor, has commenced performance under the Performance Bond on behalf of Therma Seal at its own cost.

47. Upon Frankenmuth's performance and completion of the work under the Subcontract, Frankenmuth's obligations to Anatom on behalf of Therma Seal will be satisfied.

48. Frankenmuth is entitled to equitable subrogation to Therma Seal's contract balances held by Anatom and has forwarded a demand to Anatom regarding the same, but Anatom has failed to reimburse or otherwise acknowledge the merits of Frankenmuth's claim.

49. Frankenmuth's entitlement to equitable subrogation of Therma Seal's claim through Anatom's contract with Therma Seal would not work an injustice on the rights of any third

party, but rather accomplish the equitable goal of placing all parties in their respective positions that they should have been in, in the absence of the alleged default by Therma Seal.

WHEREFORE, Plaintiff Frankenmuth Mutual Insurance Company demands judgment against Defendant Anatom Construction Company, awarding Frankenmuth its compensatory damages which have been and/or will be incurred as a result of Frankenmuth's claims of equitable subrogation, and awarding Frankenmuth such other and further relief as this Court deems necessary, just and proper.

### Count II – Breach of Contract
(Against Anatom)

50. This is an action against Anatom for breach of contract.

51. Frankenmuth re-alleges and re-avers the allegations of paragraphs 1-41 above as if fully set forth herein.

52. Anatom has materially breached the Subcontract by failing to process the change orders and make payments to Therma Seal when they became due pursuant to the Subcontract.

53. As a result of Anatom's default on the Project, Therma Seal has suffered damages.

54. Therma Seal fully performed all of its obligations under the Subcontract prior to Anatom's default.

55. As a result of Anatom's failure to honor the terms of the Subcontract, Frankenmuth, as subrogee and assignee of Therma Seal's rights to contract payments and claims, is entitled to payment of the Subcontract balance due to Therma Seal.

56. Frankenmuth is subrogated to the legal rights of Therma Seal to the extent of said payments.

WHEREFORE, Plaintiff Frankenmuth Mutual Insurance Company, as subrogee and assignee of Therma Seal Roof Systems, LLC, demands judgment against Defendant Anatom

Construction Company for compensatory damages, attorneys' fees and costs, prejudgment interest, postjudgment interest, costs, and any such other relief the Court deems just and proper.

<u>Count III – Tortious Interference with Advantageous Relationship</u>
(Against Anatom)

57. This is an action against Anatom for tortious interference with advantageous relationship.

58. Frankenmuth re-alleges and re-avers the allegations of paragraphs 1-41 above as if fully set forth herein.

59. Frankenmuth engaged in substantial negotiations with A-A Roofing for the company to act as the Completion Contractor and complete the Project.

60. Anatom had knowledge of the business relationship between Frankenmuth and A-A Roofing.

61. Anatom engaged in intentional and unjustified interference with the business relationship between Frankenmuth and A-A Roofing.

62. Anatom undertook its own negotiations with A-A Roofing while Frankenmuth was still in negotiations with the Completion Contractor.

63. Anatom continues to interfere with Frankenmuth's ability to successfully negotiate its contract with A-A Roofing by imposing onerous terms on the completion of the Project, among other things.

64. Anatom's intentional interference has breached the relationship between Frankenmuth and A-A Roofing and has prevented the parties from reaching an understanding or executing an agreement.

65. Frankenmuth has been damaged as a result of the breach of the relationship in an amount to be determined at trial.

WHEREFORE, Plaintiff Frankenmuth Mutual Insurance Company demands judgment against Defendant Anatom Construction Company for compensatory damages, prejudgment interest, postjudgment interest, costs, and any such other relief the Court deems just and proper.

Count IV – Action Against Payment Bond
(Against US Surety)

66.     This is an action against the payment bond issued by US Surety in relation to the Project.

67.     Frankenmuth re-alleges and re-avers the allegations of paragraphs 1-41 above as if fully set forth herein.

68.     On or about August 7, 2018, Anatom entered into a contract with The School Board to perform or furnish labor, services or materials required on the Quiet Waters project.

69.     On or about August 7, 2018, US Surety furnished a performance bond and payment bond pursuant to § 255.05 Fla. Stat., both bearing the bond number 100405319. *See* Exhibit "B."

70.     On or about October 4, 2018, Anatom and Therma Seal entered into a Subcontract for a roofing project at Quiet Waters Elementary School. *See* Exhibit "A."

71.     Anatom materially breached the Subcontract by failing to make payment for the change orders when such amounts became due.

72.     Anatom's material breach of the Subcontract has caused damage to Therma Seal and Frankenmuth, as subrogee and assignee of Therma Seal's rights to payment under the Subcontract.

73.     The remaining Subcontract balance is $845,856.97.

74.     The sum of $77,783.39 is now due and owing and although demand has been made, Anatom has failed and refused to pay this amount.

75. Therma Seal fully performed its obligations under the Subcontract prior to Anatom's default.

76. This payment bond claim has been timely filed within one year of the last furnishing of materials and supplies or performing of labor by Therma Seal under the Subcontract.

77. All conditions precedent to this action have occurred, have been performed, or have been waived prior to bringing this action.

WHEREFORE, Plaintiff Frankenmuth Mutual Insurance Company demands judgment against defendant United States Surety Company for compensatory damages, attorneys' fees and costs, prejudgment interest, postjudgment interest, costs, and any such other relief the Court deems just and proper.

Dated:  December 30, 2021

Respectfully submitted,

JONATHAN P. COHEN, P.A.
Attorneys for Frankenmuth Specialty Insurance Co.
500 E. Broward Blvd. Suite 1710 Fort Lauderdale FL 33394
phone: 954-462-8850 / fax: 954-848-2987

By:   /s/ *Jonathan P. Cohen*
      Jonathan P. Cohen (Florida Bar No. 011526)
      jcohen@jcohenpa.com
      Lisa B. Lia, Esq. (Florida Bar No. 1026810)
      llia@jcohenpa.com